# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# LOUISVILLE DIVISION
# CIVIL ACTION NO. 3:25-CV-00168-CRS

**JAMES L.**                                                                                      **PLAINTIFF**

**VS.**

**FRANK BISIGNANO,**
*Commissioner of Social Security*[1]                                       **DEFENDANT**

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND RECOMMENDATION

Claimant James L. appeals from the final determination of the Commissioner of Social Security denying his applications for supplemental security income benefits and disability insurance benefits. (DN 1). Claimant has filed a Fact and Law Summary and Motion for Summary Judgment. (DN 10; DN 10-1). The Commissioner has responded in a Fact and Law Summary. (DN 12). The time for Claimant to file a reply has expired. The District Judge has referred this case to the undersigned United States Magistrate Judge for consideration and preparation of a Report and Recommendation, as authorized in 28 U.S.C. § 636(b)(1)(B). (DN 7).

### I. Findings of Fact

James L. ("Claimant") applied for supplemental security income benefits under Title XVI and disability insurance benefits under Title II on January 13, 2023, alleging disability beginning September 8, 2022. (Transcript, hereinafter, "Tr." 208-225). He alleged disability due to issues with his lumbar and sacral spine, including broad-based posterior bulge, ligament flavum thickening, and mild to moderate central canal narrowing in the L4-L5 segments, as well as broad based posterior disc osteophyte, mild central canal narrowing, foraminal disc osteophyte, and

---

[1] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. He is automatically substituted as the named defendant pursuant to Fed. R. Civ. P. 25(d).

severe bilateral foraminal narrowing in the L5-S1 segments. (Tr. 250). Claimant's applications were denied at both the initial and reconsideration levels. (Tr. 80-111).

At Claimant's request, Administrative Law Judge Jonathon Stanley ("ALJ Stanley") conducted a hearing in Lexington, Kentucky on November 14, 2023. (Tr. 40). Claimant appeared by phone with his attorney. (Tr. 42). An impartial vocational expert also participated. (*Id.*).

During the hearing, Claimant testified to the following. At the time of the hearing, Claimant was 37 years old, had his GED, and was living with his spouse and two children in Raywick, Kentucky. (Tr. 43-44). He has an expired driver's license that he plans to renew; however, he notes concerns with his legs going numb while driving. (Tr. 45). Claimant previously worked as a mechanic, a material handler, a groundskeeper, a security guard, and in production (Tr. 45-57).

One day after working a twelve-hour shift, driving three hours, and moving furniture at home, Claimant started experiencing pain from his lower back up to his neck "worse than a broken bone." (Tr. 59). He also had pain and partial numbness in his legs. (Tr. 60). Claimant was only able to work for about a month after that injury, missing "quite a bit" of time at work. (*Id.*). Though Claimant received epidural injections three times and attended six weeks of physical therapy, he claims to have received no benefit or improvement. (Tr. 61). Ultimately, Claimant had surgery in February of 2023, which for the first two weeks gave him about 50% relief. (Tr. 63). The pain, however, fully returned two months after the surgery. (*Id.*). Since the surgery, Claimant has undergone additional physical therapy. He plans to undergo a vertebra fusion. (Tr. 63-64). Recently, Claimant cut down to smoking half a pack of cigarettes a day because his surgeon advised he had to quit smoking to undergo the procedure. (Tr. 57-58).

Claimant says he is not able to sit in one place with his feet down on the ground. (Tr. 65-66). He spends most of the day trying to relieve his pain, taking five doses of Gabapentin and two

2

doses of Oxycodone a day. (Tr. 66). He can lift something that weighs twenty pounds but needs to take a break after. (Tr. 68). He estimates that he can walk fifty yards on a flat surface. (*Id.*).

On March 1, 2024, ALJ Stanley issued an unfavorable decision. (Tr. 10-25). Applying the five-step sequential analysis from 20 C.F.R. § 404.1520(a), ALJ Stanley made the following findings. First, Claimant has not engaged in substantial gainful activity since September 8, 2022, the alleged onset date. (Tr. 13). Second, Claimant has the severe impairments of degenerative disc disease of the lumbar spine with radiculopathy, status post discectomy, cervicalgia, bilateral hip pain, and obesity. (Tr. 13-15). Third, Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (Tr. 15-16). Fourth, Claimant has the residual functional capacity to perform "light work" as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitations:

> [H]e can frequently push and pull using the upper extremities; can occasionally climb stairs and ramps, but cannot climb ropes, ladders and scaffolds; can occasionally balance (with "balancing" defined as maintaining body equilibrium to prevent falling when walking, standing, crouching or running on narrow, slippery, or erratically moving surfaces); can occasionally stoop, kneel, crouch and crawl; can frequently reach overhead; must avoid concentrated exposure to vibration; and cannot work at unprotected heights or around hazards such as heavy equipment.

(Tr. 16-19). Additionally, at Step Four, ALJ Stanley found Claimant cannot perform his past relevant work. (Tr. 20). Fifth and finally, considering the Claimant's age, education, work experience, and RFC, ALJ Stanley determined there were jobs that existed in the national economy that Claimant can perform. (*Id.*).

ALJ Stanley concluded Claimant was not under a disability, as defined in the Social Security Act, from September 8, 2022, through the date of the decision. (Tr. 21). Claimant appealed ALJ Stanley's decision. (Tr. 202-03). The Appeals Council declined review, finding

Claimant's reasons for disagreement did not provide a basis for changing ALJ Stanley's decision. (Tr. 1-3). At that point, the denial became the final decision of the Commissioner, and Claimant appealed to this Court. (DN 1).

## II. Standard of Review

Administrative Law Judges make determinations as to social security disability by undertaking the five-step sequential evaluation process mandated by the regulations. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (citing *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); 20 C.F.R. §§ 404.1520(b), 416.920(b). Throughout this process, the claimant bears the overall burden of establishing they are disabled; however, the Commissioner bears the burden of establishing the claimant can perform other work existing in significant numbers in the national economy. *Id.* at 804 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the Administrative Law Judge's decision is limited to an inquiry as to whether the Administrative Law Judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the Administrative Law Judge employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified

"whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).

### III. Conclusions of Law

Claimant broadly takes issue with ALJ Stanley's conclusion that Claimant's subjective statements "are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (DN 10-1, at PageID # 596). This finding, according to Claimant, is not supported by substantial evidence. (*Id.*). He believes the record supports higher levels of restriction that those opined by ALJ Stanley. Claimant accuses ALJ Stanley of "ignor[ing] important evidence," which resulted in a decision without a logical bridge between the evidence and ALJ Stanley's findings/conclusions. The Commissioner responds that ALJ Stanley properly considered Claimant's subjective complaints and reasonably articulated the rationale for his finding. (DN 12).

In assessing an individual's RFC, the ALJ must consider the claimant's subjective allegations alongside medical records and physician opinions. 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). A claimant's statement that he is experiencing pain or other symptoms will not, taken alone, establish that he is disabled; there must be medical signs and laboratory findings that show the existence of a medical impairment that could reasonably be expected to give rise to the pain or other symptoms alleged. *Id.* §§ 404.1529(a), 416.929(a).

A two-step process governs assessment of the limiting effects of a claimant's subjective symptoms. First, the ALJ determines whether an underlying medically determinable impairment exists that could reasonably be expected to produce the claimant's symptoms. *See* SSR 16-3p; *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929(a)).

5

If the first step is met, the ALJ then evaluates the intensity and persistence of the claimant's symptoms to determine the extent to which they limit the claimant's ability to perform work-related activities. *See* SSR 16-3p; *Rogers*, 486 F.3d at 247. In doing so, the ALJ evaluates the entire case record, including the objective medical evidence, the claimant's statements about her symptoms, statements and information provided by medical sources and other persons, and any other relevant evidence in the individual's case record. *Id*. The ALJ also considers other factors relevant to the claimant's symptoms, such as daily activities, frequency of pain, and measures used to relieve pain. 20 C.F.R. § 416.929(c)(3).

Courts within the Sixth Circuit have consistently held that ALJs must "build an accurate and logical bridge from the evidence to [their] conclusions." *Jeffery S. v. Comm'r of Soc. Sec.*, No. 6:24-CV-106-CHB, 2025 WL 2396570, at *4 (E.D. Ky. Aug. 18, 2025) (citing *Skelton v. Kijakazi*, No. 21-2-DLB, 2022 WL 3031750, at *4 (E.D. Ky. Aug. 1, 2022)); *see also Fleischer v. Astrue*, 774 F.Supp.2d 875, 877 (N.D. Ohio Mar. 1, 2011).

Here, ALJ Stanley properly set forth the two-part regulatory standard for assessing a claimant's subjective complaints. (*See* Tr. 16). ALJ Stanley then discussed Claimant's allegations regarding his impairments from the administrative hearing and from functional reports. (Tr. 16-17). He reviewed Claimant's perceived functional restrictions, medication and side effects, treatment other than medication, and subjective levels of pain. (*Id.*). Additionally, ALJ Stanley considered a functional report completed by Claimant's wife. (Tr. 17).

After reviewing the subjective evidence, ALJ Stanley determined that while claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms, "the [C]laimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record

for the reasons explained in his decision." (*Id.*). ALJ Stanley then went on to evaluate the objective medical evidence of record, including treatment records, imaging records, medical examinations, surgical records, recommended treatment, Claimant's activities of daily living, and the state agency physician opinions of Dr. Farmer and Dr. Meece. (Tr. 17-19).

Claimant identifies eight specific parts of ALJ Stanley's credibility analysis he believes are not supported by substantial evidence and do not meet the logical-and-accurate bridge requirement. The Court starts with Claimant's challenge to ALJ Stanley's determination that following his surgery his symptoms "were conservatively treated with pain medications and physical therapy." (Tr. 18). Claimant argues that ALJ Stanley misrepresented his treatment, emphasizing the pain medications referenced were Oxycodone (a narcotic) and Gabapentin (a controlled substance), that his physical therapy was only temporarily successful, and that two surgeons recommended a second surgery shortly after the first. (DN 10-1, at PageID # 598-99). The Commissioner argues ALJ Stanley properly concluded that physical therapy and pain medication are conservative treatment. (DN 12, at PageID # 615 (collecting cases)).

What constitutes "conservative treatment" is unsettled. Some courts have noted that a prescription for narcotics alone can be considered conservative. *See, e.g., Agustin C. v. Saul*, No. CV 18-60444-SP, 2020 WL 1491338, at *3 (C.D. Cal. Mar. 26, 2020) (citing *Huizar v. Comm'r*, 428 F. App'x 678, 680 (9th Cir. 2011) (finding that plaintiff responded to conservative treatment, which included the use of narcotic medication); *Campfield v. Comm'r*, 228 F. Supp. 3d 87, 112 (D.D.C. 2016) (finding "use of morphine does not itself mandate the conclusion that [p]laintiff's treatments were non-conservative").

But these courts and others have generally viewed the use of narcotic pain medication, combined with other treatments, to be non-conservative. *See Lapeirre-Gutt v. Astrue*, 382 F. App'x

7

662, 664 (9th Cir. 2010) (treatment consisting of "copious" amounts of narcotic pain medication, occipital nerve blocks, and trigger point injections was not conservative); *Trista C. v. Kijakazi*, No. 20 C 4921, 2021 WL 4775294, at *5 (N.D. Ill. Oct. 13, 2021 (while a medication regimen of strong narcotics, muscle relaxers, and anti-inflammatories, combined with dozens of epidural steroid injections might be termed conservative in the sense that it is not surgical, "narcotics and injections tend to support allegations of pain rather than detract from them") (citing *Schomas v. Colvin*, 732 F.3d 702, 709 (7th Cir. 2013) (contrasting "conservative' treatment" like over-the-counter medication with "more aggressive" treatment like prescription narcotics and steroid injections)); *Newman v. Comm'r of Soc. Sec.*, No. 11-cv-14365, 2013 WL 822458, at *12 (E.D. Mich. Mar. 6, 2013) (finding error with ALJ's reliance on conservative treatment where plaintiff took "high doses of narcotics and has taken a series of epidural and sacroiliac injections, all of which only provided temporary relief."); *but see O'Daniell v. Comm'r,* No. CV-20-01303-PHX-SPL, 2021 WL 1422823, at *4 (D. Ariz. Apr. 15, 2021) ("Treatment with narcotics, when paired with physical therapy or other conservative treatments 'does not violate the conservative treatment rule.'"). And courts have distinguished between infrequent or short-term narcotic usage and long-term prescriptions that are coupled with a larger plan of non-conservative treatment. *Campfield,* 228 F. Supp. 3d at 112 (citing *Durham v. Colvin*, No. CV 15-00567-RAO, 2015 WL 9305627, at *11 (C.D. Cal. Dec. 21, 2015)).

Neither of the cases the Commissioner relies on demonstrate that prescribed narcotics, in combination with other methods of treatment, qualifies as "conservative." These cases instead indicate that prescription medication and some epidural injections can be considered "modest," *Dimarzio v. Comm'r of Soc. Sec.*, No. 11-15635, 2013 WL 6163637, at *18 (E.D. Mich. Nov. 20, 2013) (citations omitted), and that steroid injections can be considered "relatively conservative

treatment," *Runk v. Comm'r of Soc. Sec.*, No. 09-12893, 2010 WL 3905241, at *3 (E.D. Mich. Sept. 30, 2010). Neither decision referenced narcotic pain medication in combination with other treatment.

Based on the above authority, ALJ Stanley's classification of Claimant's post-surgery treatment as conservative does not accurately depict the evidence. Although ALJ Stanley mentioned Claimant's pain medication, he did not elaborate on the type of medication, the dosage, or how long he took this medication. This information matters here. The "pain medication" prescribed to Claimant after the surgery was Oxycodone, which is both an opioid and a narcotic. Physicians refilled his prescription for oxycodone over the next eight months and increased his dosage at least twice. (Tr. 451, 488, 493-94, 499-500, 506). He testified during his hearing that he was taking five doses of Gabapentin, as well as two doses of Oxycodone per day. (Tr. 66-67). Additional pain medication, including the muscle relaxer cyclobenzaprine, was prescribed during this period to treat his chronic back pain. (Tr. 499-500). In addition to the ongoing and increasing use of narcotics, as well as muscle relaxers, Claimant attended physical therapy, which he felt was ineffective. (Tr. 548-50). Due to Claimant's ongoing pain with little to no relief, his surgeon presented either a vertebra fusion surgery or implantation of a spinal cord simulator as options. (Tr. 548-50). At the time of his administrative hearing, Claimant had decided to move forward with the vertebra fusion procedure. (Tr. 65-66).

Claimant's high and increasing doses of narcotic pain medication over an eight-month period, as well as use of muscle relaxers, ineffective physical therapy, and recommendations for additional surgical procedures cannot be considered a conservative course of treatment.[2] Because pain is subjective and crucial to a claimant's disability claim, a more accurate assessment of

---

[2] The Court notes that Claimant appears to have only received lumbar epidural steroid injections prior to his February 2023 lumbar discectomy, but that those injections provided no relief.

9

Claimant's post-surgical treatment in the context of his subjective allegations could lead to a different result. ALJ Stanley's reliance on Claimant's conservative treatment to assess Claimant's credibility, accordingly, is not supported by substantial evidence in the record, and the Court finds remand is necessary.

Since the Court is recommending remand on the above issue, it is unnecessary to address Claimant's remaining challenges to ALJ Stanley's credibility determination. Remand will require a total reevaluation of Claimant's subjective allegations of pain, including much of the information highlighted in Claimant's other arguments.

## IV. Recommendation

**IT IS THEREFORE RECOMMENDED** that the final decision of the Commissioner be **REVERSED** and this matter be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g), to the Commissioner for reconsideration with instructions to conduct additional proceedings to remedy the herein identified defects from the original proceedings. On remand, the Commissioner shall further develop the record, as necessary, to completely comply with the applicable regulations and permit a meaningful decision as to Claimant's entitlement to benefits.

## NOTICE

Therefore, under the provisions of 28 U.S.C. " 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be timely filed or further appeal is waived. *Thomas v. Arn*, 728 F.2d 813 (6th Cir.), *aff'd*, 474 U.S. 140 (1984).

Copies:	Counsel of Record